

# NUMBER 13-10-00495-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHRISTOPHER PYREK-ARMITAGE,                  **Appellant,**

**v.**

THE STATE OF TEXAS,                                    **Appellee.**

### On appeal from the 347th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Vela, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant Christopher Pyrek-Armitage challenges his conviction by the trial court for forgery, a third-degree felony. *See* TEX. PENAL CODE ANN. § 32.21(b), (e)(1) (West Supp. 2010). Pyrek-Armitage was sentenced to ten years' incarceration, suspended and probated for a term of five years. By one issue, Pyrek-Armitage challenges the

sufficiency of the evidence supporting his conviction.   We affirm.

## I.  BACKGROUND

Pyrek-Armitage was indicted as follows:

[O]n or about JANUARY 30, 2009, in Nueces County, Texas, [Pyrek-Armitage] did then and there, with intent to defraud and harm another, intentionally and knowingly possess with intent to pass a forged writing knowing such writing to be forged and such writing had been so made that it purported to be the act of Dan Morales, who did not authorize the act, and said writing was United States Currency of the tenor of a twenty dollar bill . . . .[1]

*See id.*   He pleaded not guilty, and the case was tried to the bench.

At trial, Leonisa Reid testified that she was a store clerk at a gas station convenience store.   In February 2009, a man came into the store to pay for gas, and Reid recognized the twenty-dollar bill he attempted to use as counterfeit.   The man who attempted to use the bill was later identified as Benjamin Bynum.

Two United States Secret Service Special Agents who investigated the case also testified at trial.   Agent Kevin Lamar testified that he interviewed Bynum when Bynum was in the custody of the Corpus Christi Police Department (CCPD).   Bynum told Agent Lamar that he had received the twenty-dollar bill from Pyrek-Armitage.   Agent Lamar then went to Pyrek-Armitage's mother's apartment.   Pyrek-Armitage was not there, but his mother consented to a search of her apartment; Agent Lamar found nothing in the apartment.   When Pyrek-Armitage arrived at the apartment, he consented to a search of his person.   In that search, Agent Lamar discovered a small quantity of drugs and one twenty-dollar bill.   The serial number and lack of security features on the bill recovered

---

[1] Pyrek-Armitage was indicted along with two co-defendants, "Ben Bynum" and "Larry Lee."

2

from Pyrek-Armitage were identical to the features on the bill Bynum attempted to use at the convenience store. Agent Lamar testified as follows regarding Pyrek-Armitage's knowledge: "He told us after initially denying that he knew the bill was counterfeit . . . ." On cross-examination, Agent Lamar testified that he did not include Pyrek-Armitage's admission in his written report.

Agent Daniel Morales testified that he recovered the bill Bynum attempted to use from CCPD. Agent Morales confirmed that the serial number of that bill matched the serial number of the bill found on Pyrek-Armitage. He testified that the United States Treasury never prints bills of the same denomination with the same serial number. He also testified that the bill Bynum attempted to use exhibited obvious signs of forgery. It was torn, appeared to have have gotten wet, and the ink was smeared. Agent Morales testifies that the ink does not smear on legitimate currency.

Bynum also testified at trial, confirming that Pyrek-Armitage had given him the twenty-dollar bill he attempted to use to pay for gas that day in February 2009. Pyrek-Armitage owed Bynum money, and he paid him back with the twenty-dollar bill Bynum used at the gas station. Bynum testified that the bill looked "a little funny" to him but when he questioned Pyrek-Armitage about this, he told Bynum that it had been run through the washer and dryer. Bynum also testified that, after he pumped the gas, he called Pyrek-Armitage who advised him not to use the bill.

Finally, Pyrek-Armitage testified on his own behalf. He testified that he and a friend had met some girls at a party on the beach. The girls asked him for a ride home, and when he drove them to the address they gave him, a man came out of the house and

3

gave him two twenty-dollar bills for gas money. Pyrek-Armitage put the bills in his wallet without looking at them. The next morning, Bynum called Pyrek-Armitage and asked him for the money Pyrek-Armitage owed him. Pyrek-Armitage gave him one of the twenty-dollar bills he had received from the man the night before. In his testimony, Pyrek-Armitage denied telling Agent Lamar that he knew the bills were counterfeit. He also denied telling Bynum that he should not try to pass the twenty-dollar bill he had given him. Pyrek-Armitage testified that he first knew the bills were counterfeit when the agents came to his mom's apartment and told him that was the case.

At the conclusion of the evidence and after argument by counsel, the trial court found Pyrek-Armitage guilty. The trial court sentenced him to ten years' incarceration in the Institutional Division of the Texas Department of Criminal Justice, suspended the sentence, and placed him on community supervision for a term of five years. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Although appellant challenges both the legal and factual sufficiency of the evidence, in light of the Texas Court of Criminal Appeals's 2010 opinion in *Brooks v. State*, we will conduct only a legal sufficiency review. *See* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). *Brooks* held that there is "no meaningful distinction between the . . . legal-sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable." *Id.* at 902. A legal sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element in a criminal offense that the State is

4

required to prove beyond a reasonable doubt. All other cases to the contrary . . . are overruled." *Id.* at 912.

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 895 (Tex. Crim. App. 2010). This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899. Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational decision. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. In this case, Pyrek-Armitage committed the offense if the evidence shows beyond a reasonable doubt that he "forge[d] a writing with intent to defraud or harm another." TEX. PENAL CODE ANN. § 32.21(b). "In the case of forgery, the culpable mental state"—i.e.,

5

intent to defraud or harm—"requires proof of knowledge that the instrument is forged." *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985) (en banc). This knowledge, and the intent that is inferred from it, may be established by circumstantial evidence. *See id.*; *see also Lopez v. State*, No. 13-08-00732-CR, 2010 WL 1115671, at *6 (Tex. App.—Corpus Christi Mar. 25, 2010, no pet.) ("Proof of intent to defraud is derivative of other elements; thus, in a forgery case, the culpable mental state of 'intent to defraud or harm' can be inferred if the State proves that the defendant knew that the writing in question was forged." (citations omitted)).

### III. DISCUSSION

By one issue, Pyrek-Armitage argues that the evidence was insufficient to show that he had knowledge that the twenty-dollar bill Bynum attempted to pass was counterfeit. We disagree.

At trial, the evidence showed that the two twenty-dollar bills—both the one Bynum attempted to pass at the gas station and the one discovered on Pyrek-Armitage by Agent Lamar—exhibited obvious signs of forgery. The ink on the bills was smeared, and they did not have any of the other security devices present on legitimate currency. Most telling, perhaps, both bills had the same serial number, and according to Agent Morales, no legitimate bills of the same denomination have the same serial number. Bynum testified that Pyrek-Armitage warned him not to use the twenty-dollar bill he had given him. And according to Agent Lamar, Pyrek-Armitage admitted to him that he knew the bills were forged.

There was evidence to the contrary: Pyrek-Armitage claimed that he pocketed

6

the bills without looking at them, denied warning Bynum about using the bill, denied admitting to Agent Lamar that he knew the bills were counterfeit, and claimed that he only learned of the forged bills when the Secret Service agents told him the bills were counterfeit. The credibility of Agent Lamar was also called into question when, on cross-examination, he testified that he had not included Pyrek-Armitage's admission in his written report. However, it was within the province of the fact finder—here, the trial court—to weigh the evidence and judge the credibility of the witnesses, and on appeal, we will not disturb the court's apparent disbelief of Pyrek-Armitage's testimony and crediting of the testimony of the other witnesses. *See Brooks*, 323 S.W.3d at 899

In light of the foregoing, we conclude that there was ample circumstantial evidence at trial to establish that Pyrek-Armitage knew the bill Bynum attempted to use at the gas station was counterfeit, *see Williams*, 688 S.W.2d at 488, and that the trial court reached a rational decision in convicting him. *See Laster*, 275 S.W.3d at 517. Pyrek-Armitage's sole issue is overruled.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 20th
day of October, 2011.

7